# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENTINO PEREZ NAVARRO,<br><br>    Plaintiff,<br><br>vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 09-CV-1239 - IEG (POR)<br><br>ORDER:<br><br>(1) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 9];<br><br>(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 12]; and<br><br>(3) REMANDING PURSUANT TO SENTENCE-SIX OF 42 U.S.C. § 405(g). |

Currently before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Having considered the parties' arguments, and for the reasons set forth below, the Court GRANTS IN PART Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS the action for further proceedings.

**BACKGROUND**

Plaintiff is a 69-year-old male with a second-year high school education equivalency. (Administrative Record ("AR") at 23.) Prior to the injury that forms the basis of this disability request, Plaintiff was an agricultural worker. (Id.) This work required him to pick up fruits, lift 80-pound bags, and to move up and down ladders. (Id. at 25.)

On January 31, 1994, Plaintiff was involved in an automobile accident when the pickup truck that he was driving was struck from behind. (Id. at 24.) The force of the collision caused Plaintiff's truck to overturn approximately 4 times, eventually causing Plaintiff to be ejected from the vehicle. (Id.) As a result of the accident, Plaintiff suffered the following complications: (1) L1 compression fracture without posterior element involvement; (2) right sacroiliac joint fracture dislocation; (3) right inferior and superior pubic rami fractures; (4) left transverse central and posterior wall acetabular fracture; (5) L4 on L5 isthmic spondylolisthesis, chronic; and (6) stress ulcer, and blood loss anemia. (Id. at 239.) Plaintiff was taken to Scripps Memorial Hospital in La Jolla, California, where he spent twenty-two days and underwent two surgeries to reconstruct his pelvic bone and to fix the dislocation in the upper portion of one of the legs. (Id. at 24-25.) Plaintiff alleges he was unable to return to work and even now has to walk with the assistance of a cane. (Id. at 25-26.) Plaintiff also suffers from type II diabetes, which affects the blood circulation in his leg and causes the leg to swell. (Id. at 26.)

In March 2006, Plaintiff protectively filed an application for Disability Insurance Benefits (DIB), alleging disability since January 1, 2005. (Id. at 95-99.) Plaintiff subsequently amended his application twice, eventually listing January 1, 1996 as the beginning date for the disability. (Id. at 100-03.) Plaintiff was last insured for DIB through December 31, 2000. (Id. at 13, 49, 55, 110.) Plaintiff's application was denied on June 22, 2006, and again upon reconsideration on January 12, 2007. (Id. at 49-52, 55-60.) Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Larry B. Parker held two hearings, one on January 9, 2008 and one on February 12, 2008. In a decision dated March 5, 2008, the ALJ found that Plaintiff had not shown that he had a qualifying medically determinable impairment during the period between his alleged onset of disability and the date he was last insured. (Id. at 13-16.) Specifically, the ALJ concluded:

> At the supplemental hearing held on February 12, 2008, the claimant testified that [he] was involved in a severe motor vehicle accident. However, the record does not contain evidence from a hospital or outpatient treating source that would substantiate the severity of the impairments alleged.
>
> The claimant's representative stated that he had exhausted attempts at retrieving records from the claimant's alleged treating sources. He represented that the claimant's treating sources advised him that the claimant's treating records had been destroyed after being archived or held for a fixed period of time.
>
> The regulations mandate that the burden is on the claimant to provide medically acceptable evidence in support of her claim (20 CFR 404.1508). Having thoroughly

reviewed the record, the undersigned finds that there is no clinical or other objective evidence to support the claimant's bare allegations for the period from the alleged disability onset date of January 1, 1996, through December 31, 2000.

(Id. at 15-16.) Plaintiff subsequently requested a review of the hearing decision by the Appeals Council. Plaintiff also was able to finally obtain the medical records from the time of the accident. (See id. at 199-392.) Although Plaintiff submitted those documents late to the Appeals Council, the Appeals Council found there was a good reason for the delay and accepted the documents. (Id. at 1-2.) Nonetheless, the Appeals Council denied the request for review of the ALJ's decision, finding that "[t]he additional documents submitted do not pertain to the period at issue." (Id.)

Plaintiff commenced this action on June 8, 2009, seeking judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff subsequently filed the present Motion for Summary Judgment, and Defendant filed a Cross-Motion for Summary Judgment. Plaintiff also filed an opposition to Defendant's cross-motion.

## LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, an applicant must show "inability to engage in any substantial gainful activity by reason of any medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary of the Social Security Administration established a five-step sequential evaluation for determining whether a person is disabled. See 20 C.F.R. § 404.1520. The burden of proof is on the applicant as to steps one through four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). As to step five, the burden shifts to the Commissioner. Id. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Id.; 20 C.F.R. § 404.1520. The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither

meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett, 180 F.3d at 1098-99 (internal citations and footnotes omitted).

The Commissioner's denial of disability benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Id. at 1097. "Substantial evidence" is defined as "'more than a mere scintilla but less than a preponderance.'" Id. at 1098 (citation omitted). In determining whether there exists substantial evidence to support the ALJ's finding, the court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Id. "'If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.'" Id. (citation omitted).

## DISCUSSION

Plaintiff contends the ALJ's decision should be set aside because the ALJ's decision that Plaintiff did not present a medically determinable impairment was not supported by substantial evidence. Plaintiff also contends that the Appeals Council committed a reversible error in wholly ignoring evidence previously not before the ALJ with respect to a medically determinable impairment. Plaintiff asks the Court to either reverse the findings of the ALJ and find that Plaintiff is *prima facie* eligible for disability benefits, or remand the case for reconsideration in light of the new evidence.

Under 42 U.S.C. § 405(g), "in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ

earlier."[1] Mayes v. Massanari, 276 F.3d 453, 461-62 (9th Cir. 2001). To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. at 462 (citation omitted). The claimant "must also demonstrate that there is a 'reasonable probability' that the new evidence would have changed the outcome of the administrative hearing." Id. (citation omitted). To demonstrate good cause, "the claimant must demonstrate that the new evidence was unavailable earlier." Id. (citation omitted). "If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (citation omitted).

### A. Materiality

In the present case, Plaintiff sought disability benefits for the period between January 1, 1996 and December 31, 2000 on the basis of physical impairments traceable to the 1994 car accident. In denying Plaintiff's request for disability benefits, the ALJ found that "the record does not contain evidence from a hospital or outpatient treating source that would substantiate the severity of the impairments alleged." (AR at 16.) After being advised that Plaintiff's counsel could not obtain the necessary treating records due to the fact that they had been destroyed by the hospital, the ALJ concluded that "there is no clinical or other objective evidence to support the claimant's bare allegations for the period from the alleged disability onset date of January 1, 1996, through December 31, 2000." (Id.) Accordingly, because the ALJ concluded that Plaintiff could not demonstrate a medically determinable impairment, the ALJ did not proceed past step two of the analysis.

After the ALJ issued his written decision, Plaintiff's counsel was finally able to obtain Plaintiff's medical records from 1994 and submitted them to the Appeals Council. However, despite this new evidence in the record, the Appeals Council denied Plaintiff's request for review, finding that the additional documents submitted did not pertain to the period at issue. (Id.)

---

[1] This type of remand is known as "sentence-six" remand because it is grounded in the sixth sentence of 42 U.S.C. § 405(g), which provides that the district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Unlike a "sentence-four" remand, which requires the district court to dispose of the action by final judgment and to relinquish jurisdiction, the "sentence-six" remand provides that the district court retains jurisdiction over the action pending further development by the agency. See Melkonyan v. Sullivan, 501 U.S. 89, 98-99 (1991).

1       Having reviewed the additional evidence submitted by Plaintiff, the Court finds it to be
2  material. The evidence consists of medical records from 1994 that demonstrate Plaintiff was involved
3  in a severe car accident as alleged in his request for disability benefits and that he underwent two
4  major surgeries on his pelvis and his legs. (See id. at 199-392.) There is little doubt that this new
5  evidence bears "'directly and substantially on the matter in dispute.'" See Mayes, 276 F.3d at 462.
6  Indeed, these medical records directly address the ALJ's concern that there was no objective evidence
7  that Plaintiff was ever injured or how severe his injuries were.[2] (See, e.g., AR at 16, 38-40.)

8       There is also a "reasonable probability" that the new evidence would have changed the
9  outcome of the administrative hearing. See Mayes, 276 F.3d at 462. Although there still remains a
10 paucity of medical records about Plaintiff's disability from January 1, 1996 to December 31, 2000,
11 there is nonetheless sufficient evidence in the record as a whole to substantiate Plaintiff's claims.
12 Viewed in conjunction with Plaintiff's medical records from 1999 and 2006, the new evidence
13 indicates that Plaintiff had a medically determinable impairment during the relevant time:

---

[2] For example, the following exchange that took place between the ALJ and Plaintiff's counsel at the first hearing on January 9, 2008 clearly illustrates the concerns of the ALJ:

ALJ:    The question is where is the evidence?
ATTY:   That's the whole thing. We've had problems getting the evidence. . . . .

. . . .

ATTY:   I doubt if they're lying. I just -- my -- I think he's got a -- I think if we could get the records, he's probably got a pretty good case. My concern is -- my --
ALJ:    If everybody gets their record as alleged, they've got a good case, but I am strictly prohibited from --
ATTY:   I understand.
ALJ:    -- from issuing anything without evidence to sustain it.
ATTY:   I understand.
ALJ:    I'm just explaining why my heart might be in it, but my head can't be.

. . . .

ATTY:   No, I mean, he -- his -- if they closed out the records in '95, and his injury occurred on January 31, '94, that would have been -- they -- everything might have been -- the surgeries and everything might have been performed in that time, and then, there is nothing actually available.
ALJ:    Well, that's speculation. I mean, again, I've go [sic] to have evidence.

. . . .

ALJ:    The only way I can grant relief is on a basis of evidence --

1,2 • Plaintiff is involved in a motor vehicle accident on January 31, 1994 and is taken to the Scripps Memorial Hospital for treatment. (See AR at 239.)

3,4,5 • Plaintiff undergoes two operations on February 3 and 9, 1994 to reconstruct his pelvic bone and to fix the dislocation in the upper portion of one of the legs. (Id.) Both surgeries are performed by Dr. John G. Rowe. (Id. at 239, 247-49, 252-54.)

6,7,8,9,10 • Plaintiff is discharged on February 19, 1994. (Id. at 239.) The diagnosis upon discharge is: (1) L1 compression fracture without posterior element involvement; (2) right sacroiliac joint fracture dislocation; (3) right inferior and superior pubic rami fractures; (4) left transverse central and posterior wall acetabular fracture; (5) L4 on L5 isthmic spondylolisthesis, chronic; and (6) stress ulcer, and blood loss anemia. (Id.)

11,12,13,14 • Plaintiff is seen by Dr. Rowe again on January 20, 1999. (Id. at 155.) Dr. Rowe notes that Plaintiff has a "complex pelvic fracture" and a "complex left acetabular fracture," and that he also has "constant pain" in his left hip. (Id.) Dr. Rowe's prognosis is that these conditions are "permanent." (Id.)

15-22 • Plaintiff is examined by Dr. Luis Antonio Sandoval on April 13, 2006. (Id. at 169.) Dr. Sandoval notes that Plaintiff has "significant pain in both hips," "reduction in arcs of movement," "lack of strength in both pelvic extremities," "a significant wearing down of the left hip," and "significant arthrosis throughout the entire lumbar dorsal spine." (Id.) According to Dr. Sandoval, Plaintiff should be given "permanent invalid status for life, due to the fact that, because of the [consequences] of the accident, he cannot work in any kind of job in case it exacerbates his problem to such an extent that it would cause more harm than good." (Id.)

In other words, even though Plaintiff cannot provide medical records for the period between January 1, 1996 and December 31, 2000, the evidence as a whole indicates that he likely was suffering from a medically determinable impairment during that time. See Smolen v. Chater, 80 F.3d 1273, 1282-83 (9th Cir. 1996) (noting that the fact the plaintiff could not produce hemoglobin levels for the relevant period did not support the ALJ's failure to find that she was anemic during that period when the medical evidence demonstrated that she was anemic before that period and that she still was anemic

1  after the relevant period). Therefore, there is at least a "reasonable probability" that the new evidence
2  would have changed the outcome of the administrative hearing. See Mayes, 276 F.3d at 462.

3    B.   Good cause

4  Plaintiff has also shown good cause for not having produced the new documents earlier. As
5  Plaintiff's counsel testified at the hearing before the ALJ, the medical records could not be obtained
6  at that time because he was informed they were destroyed pursuant to standard archiving procedures
7  at the Scripps Memorial Hospital. (See AR at 29-31, 36-39.) Once the records were obtained from the
8  Golden Eagle Insurance, however, Plaintiff's counsel immediately forwarded them to the Appeals
9  Council. (See id. at 194-97.) There is no indication that Plaintiff's counsel was anything but diligent
10 in attempting to retrieve these medical records. Accordingly, because these documents were not
11 available at the time of the hearing, Plaintiff has demonstrated sufficient "good cause" for remand. See
12 Mayes, 276 F.3d at 462; see also Key, 754 F.2d at 1551 ("If new information surfaces after the
13 Secretary's final decision and the claimant could not have obtained that evidence at the time of the
14 administrative proceeding, the good cause requirement is satisfied." (citation omitted)).

## CONCLUSION

16 For the foregoing reasons, the Court finds that because the new evidence submitted by Plaintiff
17 is clearly "material" to the disability determination in this case, and because Plaintiff has shown "good
18 cause" for having failed to present this evidence earlier, a remand pursuant to sentence-six of 42
19 U.S.C. § 405(g) is necessary. See Mayes, 276 F.3d at 461-62. Moreover, a remand is necessary to
20 allow the ALJ to consider in the first instance steps three through five of the analysis. See I.N.S. v.
21 Orlando Ventura, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a
22 case to an agency for decision of a matter that statutes place primarily in agency hands.").

23 Accordingly, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and
24 hereby **REMANDS** the case pursuant to sentence-six of 42 U.S.C. § 405(g). See Melkonyan, 501 U.S.
25 at 101-02. The Court also **DENIES** Defendant's Cross-Motion for Summary Judgment.

26 **IT IS SO ORDERED.**
27 **DATED: May 10, 2010**
28

*Anna E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**